UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2016-2
MARCH 13, 2018 SESSION



UNITED STATES OF AMERICA

v.                            CRIMINAL NO. _____5:18-cr-00026_____
                                          21 U.S.C. § 846
                                          21 U.S.C. § 856(a)(1)
JAMES H. BLUME, JR., D.O.                  21 U.S.C. § 841(a)(1)
MARK T. RADCLIFFE                          21 U.S.C. § 841(b)(1)(C)
JOSHUA RADCLIFFE                           18 U.S.C. § 1956(h)
MICHAEL T. MORAN, M.D.                     18 U.S.C. § 2
SANJAY MEHTA, D.O.
BRIAN GULLETT, D.O.
VERNON STANLEY, M.D.
MARK CLARKSON, D.O.
WILLIAM EARLEY, D.O.
PAUL W. BURKE, JR., M.D.
ROSWELL TEMPEST LOWRY, M.D.
TERESA EMERSON, LNP

S U P E R S E D I N G

I N D I C T M E N T

COUNT ONE

(Conspiracy to Distribute and Dispense Oxycodone)

The Grand Jury Charges:

1.    From on or about November 2010, and continuing through on or about June 11, 2015, in the Southern District of West Virginia and elsewhere, the defendants JAMES H. BLUME, JR., D.O., MARK T. RADCLIFFE, JOSHUA RADCLIFFE, MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D.,

ROSWELL TEMPEST LOWRY, M.D., and TERESA EMERSON, LNP, along with others known and unknown to the Grand Jury, did knowingly conspire with each other to commit offenses in violation of 21 U.S.C. § 841(a)(1), that is, knowingly and intentionally to distribute Schedule II controlled substances, including a mixture and substance containing a detectable amount of oxycodone, not for legitimate medical purposes and outside the scope of professional practice.

## *BACKGROUND*

2.    Beginning in or about November 2010, through in or about June 11, 2015, defendant JAMES H. BLUME, JR., D.O., owned Hitech Opioid Pharmachovigilance Expertise Clinic, PLLC ("HOPE Clinic"), a purported pain management clinic with locations in the Southern District of West Virginia and elsewhere. In reality, HOPE Clinic operated as a "pill mill" in that physicians prescribed unnecessarily large amounts of controlled substances either individually or over a period of time to "patients" without legitimate medical purpose and outside the usual course of medical practice in exchange for excessive fees.

3.    On or about September 22, 2010, defendant BLUME entered into a "Physician Practice Management Agreement" with defendant MARK T. RADCLIFFE. Essentially, under the terms of the agreement, defendants BLUME and MARK T. RADCLIFFE agreed that defendant BLUME would contract physicians for HOPE Clinic and defendant

2

MARK T. RADCLIFFE would serve as the practice manager of HOPE Clinic. Defendant MARK T. RADCLIFFE's responsibilities under the terms of the agreement included forming a limited liability company to run the day-to-day operations of HOPE Clinic; hiring and supervising non-medical employees, and often approving and directing financial transactions on behalf of HOPE Clinic.

4.    Defendant MARK T. RADCLIFFE owned and operated Patients, Physicians, and Pharmacists Fighting Diversion, Inc. ("PPPFD"), which acted as the practice management company for HOPE Clinic. PPPFD's purported mission was to "protect pain care against the diversion of prescription narcotic pain medicine and help law abiding patients."

5.    At all times relevant to this Indictment, PPPFD operated out of the same locations as HOPE Clinic. Part of the purported mission of PPPFD was to protect pain management clinics with "narcotics auditors." Narcotics auditors allegedly were professionals trained to protect "from the dangers of drug abuse and diversion by screening out high-risk patients that are prone to abuse and trafficking of their narcotics medication." Defendant MARK T. RADCLIFFE typically hired former law enforcement officers as narcotics auditors.

6.    During the course of the conspiracy, defendants BLUME and MARK T. RADCLIFFE opened the following HOPE Clinic locations:

| Location | Approximate Dates | Address |
|---|---|---|
| Beckley | November 2010 - July 2013 | 404 Carriage Drive Beckley Raleigh County, WV |
| Charleston | December 2011 - February 28, 2015 | 4407 MacCorkle Ave Charleston Kanawha County, WV |
| Wytheville | November 2012 - June 2015 | 340 Peppers Ferry Road, Suite B Wytheville Wythe County, VA |
| Beaver | July 2013 - June 11, 2015 | 106 Lockheed Drive Beaver Raleigh County, WV |

7.    Defendants BLUME and MARK T. RADCLIFFE also owned, operated, and/or were affiliated with HOPE Clinic locations in Whitehall, West Virginia; Fishersville and Mechanicsville, Virginia; and Murfreesboro, Tennessee, during different times between November 2010 and June 2015.

8.    Defendant MARK T. RADCLIFFE's son, defendant JOSHUA RADCLIFFE, initially began employment through PPPFD at the Beckley HOPE Clinic as a receptionist and narcotics auditor in October 2010, then was eventually promoted to Clinic Manager. Effective January 28, 2013, defendant MARK T. RADCLIFFE promoted defendant JOSHUA RADCLIFFE to be the Director of Human Resources and the Supervisor of the Beckley HOPE Clinic Manager.

9.    At all times relevant to this Indictment, defendants MARK T. RADCLIFFE and JOSHUA RADCLIFFE were not licensed medical professionals and had no known formal medical education or qualifications in the State of West Virginia or elsewhere.

4

10.   The following defendants were licensed physicians who worked at HOPE Clinic and were authorized to prescribe controlled substances for legitimate medical purposes and in the usual course of professional practice:

| Defendant | Licensing State | Primary HOPE Clinic Locations | Approximate Dates |
|---|---|---|---|
| Michael T. Moran | WV | Beckley and Charleston | August 2012 – August 2013 |
| Sanjay R. Mehta | WV | Beckley and Beaver | November 2012 – June 2015 |
| Brian C. Gullett | WV | Charleston | December 2012 – June 2014 |
| Vernon Stanley | WV | Charleston | April 2012 – April 2014 |
| Mark Clarkson | VA | Wytheville | September 2013 – June 2015 |
| William Earley | WV | Charleston | October 2013 – December 2014 |
| Paul Burke | WV | Charleston | April 2014 – September 2014 |

11.   Defendant ROSWELL TEMPEST LOWRY, M.D., who was at times a licensed practitioner, worked at the Charleston HOPE Clinic location from on or about May 20, 2014 through August 19, 2014.

12.   Defendant TERESA EMERSON, LNP, was a licensed nurse practitioner who held a Virginia nursing license. Defendant EMERSON was authorized to prescribe controlled substances for legitimate medical purposes and within the scope of professional practice under the supervision of a licensed physician. Defendant EMERSON worked as a nurse practitioner for HOPE Clinic in Wytheville, Virginia, starting in or about September 2014 through June 12, 2015.

### *CONTROLLED SUBSTANCES – GENERAL ALLEGATIONS AND TERMINOLOGY*

13.   The Controlled Substances Act governs the manufacture, distribution, and dispensation of controlled substances in the United States. The Act and the Code of Federal Regulations contain definitions relevant to this Indictment, some of which are set forth below.

14.   The term "controlled substance" means a drug or other substance, or immediate precursor, included in Schedule I, II, III, or IV, as designated by 21 U.S.C. § 802(6) and the Code of Federal Regulations.

15.   The term "Schedule II" means the drug or other substance has a high potential for abuse, has a currently accepted medical use with severe restrictions, and abuse of the drug or other substances may lead to severe psychological or physical dependence.

16.   The term "practitioner" means a medical doctor, physician, or other individual licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he or she practices, to dispense controlled substances in the course of professional practice.

17.   The Drug Enforcement Administration issues registration numbers to qualifying practitioners, who are then authorized to dispense Schedule II, III, IV, and V controlled substances.

6

18.   To be issued and maintain a DEA registration number, a physician or non-physician must comply with all state laws regarding the practice of medicine and the prescribing of medication.

19.   In Virginia, for a non-physician medical provider to have prescribing authority, the provider must be under a written agreement with a licensed physician who assumes responsibility for all prescriptions issued under that agreement.

20.   A practitioner violates the Controlled Substances Act and the relevant Code Federal Regulation if he or she issues a prescription for controlled substances not for legitimate medical purposes and outside the scope of professional practice.

21.   The West Virginia Board of Pharmacy maintains the West Virginia Prescription Monitoring Program ("WVPMP") by centrally collecting data regarding the prescribing and filling of Schedule II, III, and IV controlled substances to deter the illegitimate use of prescription controlled substances. A similar system is maintained in Virginia, which is known as the Virginia Prescription Monitoring Program ("VAPMP"); in Kentucky, which is known as the Kentucky All Schedule Prescription Electronic Reporting ("KASPER"); and in Ohio, which is known as the Ohio Automated RX Reporting System ("OARRS"). An individual report generated by these systems is typically referred to as a Prescription Monitoring Profile.

22.  The term "doctor shopping" refers to the practice of a patient visiting multiple practitioners to obtain multiple prescriptions for controlled substances.

23.  Oxycodone is a narcotic, opioid analgesic classified as a Schedule II controlled substance. It is sold in generic form and under brand names including OxyContin, Percocet, Roxicodone, Roxicet, and Endocet. When legally prescribed for a legitimate medical purpose, oxycodone is used to treat moderate to severe pain. However, even if prescribed for a legitimate medical purpose and even if taken in the prescribed amounts, oxycodone can cause physical and psychological dependence.

24.  Oxycodone and other Schedule II drugs have a high potential for abuse and can be crushed and snorted, or dissolved and injected to get an immediate high. This abuse could lead to addiction, overdose, and, in some cases, death. At all times relevant to this indictment, demand for oxycodone grew to epidemic proportions in many parts of the United States, including Southern West Virginia and Western Virginia, where drug dealers sold pills containing oxycodone for $1 per milligram or more.

### MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

25.  Defendants BLUME and MARK T. RADCLIFFE operated HOPE Clinic as a cash-based business that prescribed oxycodone and other Schedule II controlled substances to customers. Defendants BLUME

8

and MARK T. RADCLIFFE devised a scheme under which HOPE Clinic did not bill customers' insurance companies, did not require a physician referral or substantive medical records from its customers, and discouraged practitioners from referring customers for other type of pain-relieving therapies such as physical therapy, massage therapy, or interventional pain management procedures. Practitioners prescribed collectively and individually numerous Schedule II prescriptions that were unreasonable and medically unnecessary. Even though defendants BLUME and MARK T. RADCLIFFE held out HOPE Clinic as specializing in the treatment of pain management, they knowingly contracted the services of medical professionals with no background or specialized training in pain management, including defendants MORAN, MEHTA, GULLETT, STANLEY, CLARKSON, EARLEY, BURKE, LOWRY, and EMERSON.

26. Defendants MORAN, MEHTA, GULLETT, STANLEY, CLARKSON, EARLEY, BURKE, LOWRY, and EMERSON, executed defendants BLUME and MARK T. RADCLIFFE's scheme by prescribing oxycodone and other Schedule II controlled substances not for legitimate medical purposes and outside the scope of professional practice in the following non-exhaustive ways:

    a.  Consistently conducting cursory, incomplete, inadequate, or no medical examination of customers;

    b.  Failing to verify customers' medical complaints prior to prescribing oxycodone and other Schedule II controlled substances;

9

c.  Providing large amounts of Schedule II prescription medications to customers that they knew to be and had a reasonable cause to believe, were drug addicts, including customers whom the practitioner did not examine in person before issuing that customer a prescription for a controlled substance;

d.  Prescribing oxycodone and other Schedule II controlled substances to customers who admitted buying or receiving controlled substances illegally;

e.  Prescribing oxycodone and other Schedule II controlled substances to customers whose drug screens showed use of illicit controlled substances or non-use of prescribed controlled substances; and

f.  Prescribing oxycodone and other Schedule II controlled substances to customers even though the customer's Prescription Monitoring Profile showed evidence of doctor shopping.

27. Although HOPE Clinic provided customers with prescriptions for highly-addictive controlled substances, such as oxycodone, practitioners, including defendants MORAN, MEHTA, GULLETT, STANLEY, CLARKSON, EARLEY, BURKE, LOWRY, and EMERSON routinely:

a.  Failed to conduct sufficient dialogue with the customers regarding treatment options and risks and benefits of such treatments;

b.  Failed to adjust pain therapy to the individual medical needs of the customers (if needs existed);

c.  Refrained from prescribing alternative treatments, including physical therapy, massage therapy, and interventional pain management procedures; and

      d.    Failed to counsel customers as to the proper usage and risks associated with the inappropriate combinations of medications.

28. Defendants MARK T. RADCLIFFE, JOSHUA RADCLIFFE, and PPPFD employees gave medical direction to practitioners within HOPE Clinic including directions on how often practitioners were required to examine a customer, whether to reduce a customer's medications and the extent of the reduction for failed drug screens, and how long the practitioners should spend examining each customer.

29. Defendant MARK T. RADCLIFFE and JOSHUA RADCLIFFE instructed medical practitioners at HOPE Clinic to provide customers with prescriptions for Schedule II controlled substances, sometimes in direct contrast with the practitioners' clinical opinions.

30. After a customer was denied controlled substance prescriptions by one practitioner at HOPE Clinic, defendants MARK T. RADCLIFFE and JOSHUA RADCLIFFE routinely reassigned the customer to a different HOPE Clinic practitioner at a different HOPE Clinic location to ensure the customer received a prescription and continued paying HOPE Clinic and PPPFD fees.

31. The Beckley, Beaver, Charleston, and Wytheville HOPE Clinics had large numbers of customer visits per day with typically only one practitioner working at each location. Some HOPE Clinic

11

locations, including Beaver and Charleston, averaged sixty-five or more customers a day during a ten-hour workday with only one practitioner working and on some days had an excess of one hundred customers per day per practitioner.

32. During the course of the conspiracy, pharmacies began to refuse to fill prescriptions from practitioners of the HOPE Clinic. In order to facilitate customers getting their prescriptions for Schedule II controlled substances filled, defendant MARK T. RADCLIFFE created a pharmacy liaison program within PPPFD and would direct customers to a pharmacy willing to fill their prescriptions.

33. Defendants BLUME and MARK T. RADCLIFFE used unlicensed PPPFD narcotics auditors with no medical education to take customers' blood pressure, pulse, and medical history. Narcotics auditors also wrote out prescriptions without a practitioner's order and preprinted prescriptions for the practitioner's signature based on the prescription received by the customer at the last month's visit.

34. Defendant BLUME and MARK T. RADCLIFFE did not hire additional medical professionals such as nurses, physician assistants, or other medical professionals because hiring additional medical personal would "cut into the doctor's profit."

35. Under defendant BLUME and MARK T. RADCLIFFE's plan, defendants MORAN, MEHTA, GULLETT, STANLEY, CLARKSON, EARLEY, BURKE, LOWRY, and EMERSON consistently prescribed oxycodone and

other opiate medications to customers, such as morphine, oxymorphone, methadone, and fentanyl, not for a legitimate medical purpose and outside the scope of professional practice.

36.  Defendants STANLEY, GULLETT, EARLEY, LOWRY, and BURKE prescribed in a one-year period from September 10, 2013, through September 9, 2014, approximately 2,130 oxycodone-based pills to customer P.H.

37.  Defendants MEHTA and MORAN, prescribed from February 27, 2013, through August 12, 2014, approximately 2,205 oxycodone-based pills and 660 morphine pills to customer J.L.C.

38.  Defendants STANLEY, GULLETT, EARLEY, and CLARKSON prescribed from November 6, 2012, through November 20, 2013, approximately 2,250 oxycodone-based pills to customer J.G.

39.  Defendants CLARKSON, EMERSON, and other practitioners known to the Grand Jury, prescribed in a one-year period beginning March 6, 2014, approximately 1,610 oxycodone-based pills to customer J.M.B.

### *HOPE CLINIC/PPPFD FINANCIAL INFORMATION*

40.  Defendants BLUME and MARK T. RADCLIFFE charged in-state customers at least $275 for an initial appointment and at least $160 for each subsequent visit. Each out-of-state customer paid at least $330 for an initial visit and at least $185 for each subsequent visit.

41.  As detailed below, defendants BLUME and MARK T. RADCLIFFE operated HOPE Clinic as a predominately cash business.

| Year | Total Customer Payments Received From All Clinics | Total Cash Amount Received | Total Credit Card Amount Received | Cash Percentage |
|------|---------|---------|---------|------|
| 2012 | $3,815,156.74 | $3,540,015.76 | $275,140.98 | 93% |
| 2013 | $7,412,581.69 | $6,577,088.94 | $835,492.75 | 89% |
| 2014 | $9,247,015.00 | $8,239,620.97 | $1,007,394.03 | 89% |
| 2015 | $3,375,309.91 | $2,928,961.89 | $446,348.02 | 87% |

42.  During the operation of HOPE Clinic, defendant BLUME controlled HOPE Clinic bank accounts at First Century Bank ("FCB Account -4625") and Branch Banking & Trust Bank ("BB&T Account -1559"). Defendant MARK T. RADCLIFFE controlled PPPFD bank accounts at First Community Bank ("FCB Account -9268") and Branch Banking & Trust Bank ("BB&T Account -1524"). The cash received from customers of HOPE Clinic was deposited into the HOPE Clinic and PPPFD accounts. Defendant BLUME also paid Defendant MARK T. RADCLIFFE various monthly amounts for defendant MARK T. RACLIFFE and PPPFD's services as practice manager of HOPE Clinic. Defendant MARK T. RADCLIFFE deposited these payments from defendant BLUME into FCB Account -9268 and BB&T Account -1524.

43.  Defendants BLUME and MARK T. RADCLIFFE paid bonuses to practitioners, including defendants MORAN, MEHTA, GULLETT, STANLEY, CLARKSON, EARLEY, BURKE, and LOWRY, based on the profit

of HOPE Clinic, which was directly tied to the number of customers who visited each HOPE Clinic daily.

44.   The bonus structure established by defendants BLUME and MARK T. RADCLIFFE encouraged and rewarded practitioners, including defendants MORAN, MEHTA, GULLETT, STANLEY, CLARKSON, EARLEY, BURKE, and LOWRY, to prescribe Schedule II prescription pain medications to customers who otherwise showed signs of abuse or diversion, at times in direct contravention of HOPE Clinic and PPPFD policies; to keep customers returning to the HOPE Clinic by prescribing Schedule II controlled substances; and to move as many customers as possible through HOPE Clinic each day without providing legitimate medical care.

45.   From November 2010 through May 4, 2012, defendant BLUME typically issued large, bi-monthly checks containing the practitioners' bonuses and wages from his FCB Account -4625 to a physician staffing company that administered the contracts between HOPE Clinic and the practitioners. The physician staffing company in turn distributed the funds, through checks written on its bank accounts, to the practitioners. Beginning in April 2012 through September of 2014, defendant BLUME used his BB&T Account -1559 to issue the bi-monthly checks containing the practitioners' bonuses and wages to the physician staffing company. From October 2014 through the end of the conspiracy, defendant BLUME used his BB&T

Account -1559 to issue the bi-monthly checks containing the practitioners' bonuses directly to the practitioners.

46.   Defendant MARK T. RADCLIFFE and his company, PPPFD, also paid bonuses to PPPFD employees, including defendant JOSHUA RADCLIFFE, clinic managers and narcotics auditors. Defendant MARK T. RADCLIFFE based the bonuses, depending on the employee's position, on the number of customers seen by each auditor, the number of paying customers at each HOPE Clinic location, or the total number of audits completed at each clinic. Defendant MARK T. RADCLIFFE's bonus structure encouraged and rewarded PPPFD employees, including defendant JOSHUA RADCLIFFE, clinic managers and narcotics auditors, to increase the number of customer visits, to keep customers who were in violation of HOPE Clinic and PPPFD policies, and to move as many customers as possible through HOPE Clinic each day.

In violation of Title 21, United States Code, Section 846.

## COUNT TWO
### (Maintaining a Drug-Involved Premises)

1.     Paragraphs 1 through 46 of Count One are incorporated herein by reference.

2.     Between in or about November 2010, through in or about July 2013, in Beckley, Raleigh County, West Virginia, within the Southern District of West Virginia, defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE, aided and abetted by each other, knowingly and intentionally opened, rented, used, and maintained office space at 404 Carriage Drive, Beckley, West Virginia, 25801, for the purpose of distributing and dispensing a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, not for legitimate medical purposes and outside the scope of professional practice.

In violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.

17

## COUNT THREE
### (Maintaining a Drug-Involved Premises)

1.    Paragraphs 1 through 46 of Count One are incorporated herein by reference.

2.    Between in or about December 2011, through in or about February 26, 2015, in Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE, aided and abetted by each other, knowingly and intentionally opened, rented, used, and maintained office space at 4407 MacCorkle Ave SE, Charleston, West Virginia 25304, for the purpose of distributing and dispensing a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, not for legitimate medical purposes and outside the scope of professional practice.

In violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.

## COUNT FOUR
### (Maintaining a Drug-Involved Premises)

1.   Paragraphs 1 through 46 of Count One are incorporated herein by reference.

2.   Between in or about July 2013, through in or about June 2015, in Beaver, Raleigh County, West Virginia, within the Southern District of West Virginia, defendants JAMES H. BLUME, JR., D.O., and MARK T. RADCLIFFE, aided and abetted by each other, knowingly and intentionally opened, used, rented, and maintained office space at 106 Lockheed Drive, Beaver, Raleigh County, West Virginia 25813, for the purpose of distributing and dispensing a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, not for legitimate medical purposes and outside the scope of professional practice.

In violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.

## COUNTS FIVE — THIRTY-SIX
### (Distribution of Controlled Substances)

On or about each of the dates listed below, at or near Beckley and Beaver, Raleigh County, West Virginia, in the Southern District of West Virginia and elsewhere, the defendants listed in the chart below knowingly and intentionally distributed and dispensed, and caused to be distributed and dispensed, a mixture and substance containing a detectable amount of a Schedule II controlled substance as listed in the chart below, not for legitimate medical purposes and outside the scope of professional practice.

| COUNT | DEFENDANT | CUSTOMER | DATE PRESCRIPTION WRITTEN | CONTROLLED SUBSTANCE (Strength and Number of Pills) |
|---|---|---|---|---|
| 5 | SANJAY MEHTA | J.L.C. | 02/25/2013 | Oxycodone 15 mg, 150 Morphine Sulphate ER 15 mg, 90, also known as MS Contin |
| 6 | MICHAEL T. MORAN | J.L.C. | 08/14/2013 | Oxycodone 30 mg, 75 Morphine Sulphate ER 15 mg, 60, also known as MS Contin |
| 7 | SANJAY MEHTA | J.L.C. | 08/12/2014 | Oxycodone 30 mg, 120 |
| 8 | SANJAY MEHTA | J.L.C. | 05/19/2015 | Oxycodone 30 mg, 120 |
| 9 | SANJAY MEHTA | M.C. | 10/29/2013 | Oxycodone 30 mg, 90 |
| 10 | SANJAY MEHTA | J.C. | 07/02/2013 | Oxycodone 10 mg, 120 |
| 11 | SANJAY MEHTA | D.D. | 03/25/2013 | Oxycodone 30 mg, 120 Methadone HCL 10 mg, 120 |
| 12 | MICHAEL T. MORAN | D.D. | 08/13/2013 | Oxycodone 30 mg, 120 Methadone HCL 10 mg, 120 |
| 13 | SANJAY MEHTA | D.D. | 09/10/2013 | Oxycodone 30 mg, 135 |

| 14 | VERNON STANLEY | D.D. | 02/26/2014 | Oxycodone 30 mg, 135 Methadone HCL 10 mg, 120 |
|----|----|----|----|----|
| 15 | WILLIAM EARLEY | D.D. | 03/20/2014 | Oxycodone 30 mg, 15 |
| 16 | SANJAY MEHTA | D.D. | 03/26/2014 | Oxycodone 30 mg, 120 Oxycodone 30 mg, 15 Methadone HCL 10 mg, 120 |
| 17 | SANJAY MEHTA | D.L. | 02/18/2014 | Oxycodone 15 mg, 90 |
| 18 | BRIAN GULLETT | D.L. | 03/18/2014 | Oxycodone 15 mg, 90 OxyContin 10 mg, 60, also known as Oxycodone |
| 19 | SANJAY MEHTA | D.L. | 06/19/2014 | Oxycodone 15 mg, 120 |
| 20 | SANJAY MEHTA | D.L. | 12/02/2014 | Oxycodone 17 mg, 50 |
| 21 | SANJAY MEHTA | D.L. | 12/03/2014 | Oxycodone 17 mg, 100 |
| 22 | SANJAY MEHTA | E.O. | 05/06/2013 | Oxycodone 30 mg, 210 Oxycodone SR 100 mg, 90 |
| 23 | SANJAY MEHTA | E.O. | 04/07/2014 | Oxycodone 30 mg, 210 Oxycodone SR 100 mg, 90 Hydromorphone, also known as Dilaudid, 8 mg, 120 |
| 24 | SANJAY MEHTA | E.O. | 02/09/2015 | Oxycodone 30 mg, 210 Oxycodone SR 100 mg, 90 Hydromorphone, also known as Dilaudid, 8 mg, 120 |
| 25 | SANJAY MEHTA | C.R. | 03/20/2013 | Oxycodone 30 mg, 150 Oxycodone 15 mg, 90 |
| 26 | SANJAY MEHTA | C.R. | 07/10/2013 | Oxycodone 30 mg, 150 Oxycodone 15 mg, 90 Morphine Sulphate ER 15 mg, 30, also known as MS Contin |
| 27 | SANJAY MEHTA | H.R. | 03/14/2013 | Oxycodone 15 mg, 120 |
| 28 | SANJAY MEHTA | H.R. | 07/01/2013 | Oxycodone 15 mg, 150 |

| 29 | SANJAY MEHTA | H.R. | 03/10/2014 | Oxycodone 30 mg, 90 |
| 30 | SANJAY MEHTA | H.R. | 08/26/2014 | Morphine Sulphate ER 15 mg, 30, also known as MS Contin Oxycodone 28 mg, 90 |
| 31 | SANJAY MEHTA | H.R. | 11/18/2014 | Morphine Sulphate ER 15 mg, 30, also known as MS Contin Oxycodone 30 mg, 90 |
| 32 | SANJAY MEHTA | H.R. | 03/10/2015 | Oxycodone 30 mg, 90 Fentanyl 12 mcg/hr, 10 |
| 33 | SANJAY MEHTA | J.S. | 04/30/2013 | Oxycodone 15 mg, 120 |
| 34 | SANJAY MEHTA | J.S. | 04/02/2014 | Oxycodone 15 mg, 120 OxyContin 10 mg, 60, also known as Oxycodone |
| 35 | SANJAY MEHTA | J.S. | 06/25/2014 | Oxycodone 15 mg, 120 OxyContin 15 mg, 60, also known as Oxycodone |
| 36 | SANJAY MEHTA | C.T. | 12/05/2013 | Oxycodone 15 mg, 90 |

All in violation of Title 21, United States Code, Section 841(a)(1).

**COUNTS THIRTY-SEVEN – NINETY-THREE**
**(Distribution of Controlled Substances)**

On or about each of the dates listed below, at or near Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia and elsewhere, the defendants listed in the chart below knowingly and intentionally distributed and dispensed, and caused to be distributed and dispensed, a mixture and substance containing a detectable amount of a Schedule II controlled substance as listed in the chart below, not for legitimate medical purposes and outside the scope of professional practice.

| COUNT | DEFENDANT | CUSTOMER | DATE PRESCRIPTION WRITTEN | CONTROLLED SUBSTANCE (Strength and Number of Pills) |
|---|---|---|---|---|
| 37 | VERNON STANLEY | D.J.B. | 11/05/2013 | Oxycodone 10 mg, 60 Oxycodone/acetaminophen 10 mg/325, 120, also known as Percocet, also known as Endocet |
| 38 | BRIAN GULLETT | D.J.B. | 03/25/2014 | Oxycodone 10 mg, 120 Oxycodone/acetaminophen 7.5 mg/325, 120, also known as Percocet, also known as Endocet |
| 39 | WILLIAM EARLEY | D.J.B. | 04/24/2014 | Oxycodone 10 mg, 60 Oxycodone/acetaminophen 10 mg/325, 120, also known as Percocet, also known as Endocet |
| 40 | ROSWELL TEMPEST LOWRY | D.J.B. | 06/17/2014 | Oxycodone 10 mg, 60 Oxycodone/acetaminophen 10 mg/325, 120, also known as Percocet, also known as Endocet |
| 41 | BRIAN GULLETT | S.B. | 04/10/2013 | Oxycodone 30 mg, 120 |

| COUNT | DEFENDANT | CUSTOMER | DATE PRESCRIPTION WRITTEN | CONTROLLED SUBSTANCE (Strength and Number of Pills) |
|---|---|---|---|---|
| 42 | WILLIAM EARLEY | S.B. | 05/07/2014 | Oxycodone 30 mg, 120 |
| 43 | BRIAN GULLETT | D.E.B. | 03/12/2013 | Oxycodone 30 mg, 120 Oxycodone 15 mg, 30 |
| 44 | VERNON STANLEY | D.E.B. | 07/01/2013 | Oxycodone 30 mg, 60 Oxycodone 15 mg, 30 |
| 45 | MARK CLARKSON | D.E.B. | 09/23/2013 | Oxycodone 30 mg, 90 Oxycodone 15 mg, 30 |
| 46 | WILLIAM EARLEY | D.E.B. | 11/18/2013 | Oxycodone 30 mg, 120 Oxycodone 15 mg, 30 |
| 47 | BRIAN GULLETT | J.G. | 02/28/2013 | Oxycodone 30 mg, 60 Oxycodone/acetaminophen 10 mg/325mg, 120, also known as Percocet, also known as Endocet |
| 48 | BRIAN GULLETT | J.G. | 08/27/2013 | Oxycodone 30 mg, 60 Oxycodone/acetaminophen 10 mg/325 mg, 120, also known as Percocet, also known as Endocet |
| 49 | MARK CLARKSON | J.G. | 09/24/2013 | Oxycodone 30 mg, 60 Oxycodone 10 mg/325 mg, 120, also known as Percocet, also known as Endocet |
| 50 | BRIAN GULLETT | J.G. | 01/14/2014 | Oxycodone 30 mg, 60 Oxycodone/acetaminophen 10 mg/325 mg, 90, also known as Percocet, also known as Endocet Morphine Sulphate ER 15 mg, 30, also known as MS Contin |
| 51 | WILLIAM EARLEY | J.G. | 02/11/2014 | Oxycodone 30 mg, 60 Percocet 10 mg/325 mg, 90 Morphine Sulphate ER 15 mg, 30, also known as MS Contin |
| 52 | BRIAN GULLETT | P.H. | 04/23/2013 | Oxycodone 15 mg, 150 |
| 53 | VERNON STANLEY | P.H. | 11/05/2013 | Oxycodone 20 mg, 150 |
| 54 | PAUL BURKE | P.H. | 08/12/2014 | Oxycodone 15 mg, 30 |

| COUNT | DEFENDANT | CUSTOMER | DATE PRESCRIPTION WRITTEN | CONTROLLED SUBSTANCE (Strength and Number of Pills) |
|---|---|---|---|---|
| 55 | ROSWELL TEMPEST LOWRY | P.H. | 08/12/2014 | Oxycodone 20 mg, 150 |
| 56 | PAUL BURKE | P.H. | 09/09/2014 | Oxycodone 15 mg, 30 Oxycodone 20 mg, 150 |
| 57 | BRIAN GULLETT | N.J. | 04/09/2013 | Oxycodone 15 mg, 60 |
| 58 | WILLIAM EARLEY | N.J. | 05/07/2014 | Oxycodone 30 mg, 90 |
| 59 | BRIAN GULLETT | P.K. | 03/26/2014 | Oxycodone 15 mg, 120 Morphine Sulphate ER 15 mg, 54, also known as MS Contin |
| 60 | WILLIAM EARLEY | P.K. | 04/23/2014 | Oxycodone 15 mg, 120 Morphine Sulphate ER 15 mg, 60, also known as MS Contin |
| 61 | PAUL BURKE | P.K. | 05/21/2014 | Oxycodone 15 mg, 120 Morphine Sulphate ER 15 mg, 60, also known as MS Contin |
| 62 | TEMPEST ROSWELL LOWRY | P.K. | 06/18/2014 | Oxycodone 15 mg, 120 Oxymorphone 10 mg, 60, also known as Opana |
| 63 | WILLIAM EARLEY | P.K. | 07/16/2014 | Oxycodone 15 mg, 120 Morphine Sulphate ER 15 mg, 60, also known as MS Contin |
| 64 | VERNON STANLEY | L.L. | 03/06/2013 | Oxycodone 15 mg, 120 Morphine Sulphate ER 30 mg, 60, also known as MS Contin |
| 65 | VERNON STANLEY | L.L. | 07/24/2013 | Oxycodone 15 mg, 120 Morphine Sulphate ER 30 mg, 60, also known as MS Contin Oxycodone/acetaminophen 10 mg/325 mg, 30, also known as Percocet, also known as Endocet |
| 66 | BRIAN GULLETT | L.L. | 11/13/2013 | Oxycodone 20 mg, 180 Morphine Sulphate ER 30 mg, 60, also known as MS Contin |

| COUNT | DEFENDANT | CUSTOMER | DATE PRESCRIPTION WRITTEN | CONTROLLED SUBSTANCE (Strength and Number of Pills) |
|---|---|---|---|---|
| 67 | WILLIAM EARLEY | L.L. | 06/03/2014 | Oxycodone 20 mg, 180 Morphine Sulphate ER 30 mg, 60, also known as MS Contin |
| 68 | ROSWELL TEMPEST LOWRY | L.L. | 07/1/2014 | Oxycodone 20 mg, 180 Morphine Sulphate ER 30 mg, 60, also known as MS Contin |
| 69 | VERNON STANLEY | L.M. | 03/20/2013 | Oxycodone 30 mg, 120 Morphine Sulphate ER 30 mg, 60, also known as MS Contin |
| 70 | BRIAN GULLETT | L.M. | 05/15/2013 | Oxycodone 30 mg, 120 Morphine Sulphate ER 30 mg, 60, also known as MS Contin |
| 71 | BRIAN GULLETT | L.M. | 10/30/2013 | Oxycodone 30 mg, 120 Morphine Sulphate ER 60 mg, 60, also known as MS Contin |
| 72 | VERNON STANLEY | L.M. | 11/27/2013 | Oxycodone 30 mg, 120 Morphine Sulphate ER 60 mg, 60, also known as MS Contin |
| 73 | BRIAN GULLETT | W.P. | 06/20/2013 | Oxycodone 15 mg, 120 Oxycodone/acetaminophen 10mg/325 mg, 90, also known as Percocet, also known as Endocet |
| 74 | VERNON STANLEY | W.P. | 10/10/2013 | Oxycodone 15 mg, 180 Oxycodone/acetaminophen 10mg/325 mg, 90, also known as Percocet, also known as Endocet |
| 75 | PAUL BURKE | W.P. | 06/19/2014 | Oxycodone 20 mg, 180 Oxycodone/acetaminophen 10mg/325 mg, 90, also known as Percocet, also known as Endocet |
| 76 | VERNON STANLEY | O.R. | 07/22/2013 | Oxycodone 15 mg, 180 Oxymorphone 20 mg, 60, also known as Opana |

| COUNT | DEFENDANT | CUSTOMER | DATE PRESCRIPTION WRITTEN | CONTROLLED SUBSTANCE (Strength and Number of Pills) |
|---|---|---|---|---|
| 77 | BRIAN GULLETT | O.R. | 03/31/2014 | Oxycodone 15 mg, 150 Oxymorphone, 30 mg, 60, also known as Opana |
| 78 | VERNON STANLEY | J.D.S. | 03/21/2013 | Oxycodone 30 mg, 120 |
| 79 | BRIAN GULLETT | J.D.S. | 04/16/2014 | Oxycodone 30 mg, 120 Oxycodone 10 mg, 60 |
| 80 | PAUL BURKE | J.D.S. | 09/04/2014 | Oxycodone 30 mg, 120 Oxycodone 15 mg, 60 |
| 81 | VERNON STANLEY | J.T. | 03/19/2013 | Oxycodone 20 mg, 150 |
| 82 | PAUL BURKE | J.T. | 07/10/2014 | Oxycodone 20 mg, 180 |
| 83 | PAUL BURKE | J.T. | 08/07/2014 | Oxycodone 20 mg, 180 |
| 84 | BRIAN GULLETT | S.W. | 04/09/2013 | Oxycodone 15 mg, 120 |
| 85 | VERNON STANLEY | S.W. | 05/07/2013 | Oxycodone 15 mg, 120 |
| 86 | MARK CLARKSON | S.W. | 09/24/2013 | Oxycodone 15 mg, 120 |
| 87 | VERNON STANLEY | S.W. | 10/22/2013 | Oxycodone 15 mg, 120 Oxycodone 10/325 mg, 60, also known as Percocet, also known as Endocet |
| 88 | WILLIAM EARLY | S.W. | 11/19/2013 | Oxycodone 15 mg, 120 |
| 89 | WILLIAM EARLY | S.W. | 03/10/2014 | Oxycodone 15 mg, 120 Oxycodone 10/325 mg, 60, also known as Percocet, also known as Endocet |
| 90 | WILLIAM EARLY | S.W. | 06/02/2014 | Oxycodone 15 mg, 120 Oxycodone 10/325 mg, 60, also known as Percocet, also known as Endocet |
| 91 | ROSWELL TEMPEST LOWRY | S.W. | 06/30/2014 | Oxycodone 15 mg, 120 Oxycodone 10/325 mg, 60, also known as Percocet, also known as Endocet |

| COUNT | DEFENDANT | CUSTOMER | DATE PRESCRIPTION WRITTEN | CONTROLLED SUBSTANCE (Strength and Number of Pills) |
|-------|-----------|----------|---------------------------|-----------------------------------------------------|
| 92 | WILLIAM EARLY | S.W. | 07/28/2014 | Oxycodone 15 mg, 150 Oxycodone 10/325 mg, 60, also known as Percocet, also known as Endocet |
| 93 | PAUL BURKE | S.W. | 08/25/2014 | Oxycodone 15 mg, 150 Oxycodone 10/325 mg, 60, also known as Percocet, also known as Endocet |

All in violation of Title 21, United States Code, Section 841(a)(1).

**COUNT NINETY-FOUR**
**(Distributing and Dispensing Causing Death)**

On or about May 14, 2013, at or near Beckley, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant SANJAY MEHTA, D.O., knowingly and intentionally distributed and dispensed a quantity of oxycodone and methadone, both Schedule II controlled substances, not for legitimate medical purposes and outside the scope of professional practice, which distribution resulted in the death of customer T.P.G. from the subsequent use of the prescribed oxycodone.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

**COUNT NINETY-FIVE**
**(Distributing and Dispensing Causing Death)**

On or about July 28, 2013, at or near Beaver, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant SANJAY MEHTA, D.O., knowingly and intentionally distributed and dispensed a quantity of oxycodone, a Schedule II controlled substance, not for legitimate medical purposes and outside the scope of professional practice, which distribution resulted in the death of customer J.B. from the subsequent use of the prescribed oxycodone.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

30

## COUNT NINETY-SIX
### (Distributing and Dispensing Controlled Substances)

On or about January 29, 2014, at or near Beaver, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant SANJAY MEHTA, D.O., aided, abetted, counseled, commanded, induced and procured by defendant JOSHUA RADCLLIFFE, knowingly and intentionally distributed and dispensed a quantity of oxycodone and a quantity of methadone, both Schedule II controlled substances, not for legitimate medical purposes and outside the scope of professional practice to customer D.D.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT NINETY-SEVEN
### (Distributing and Dispensing Controlled Substances)

On or about January 30, 2014, at or near Beaver, Raleigh County, West Virginia, and within the Southern District of West Virginia, defendant SANJAY MEHTA, D.O., aided, abetted, counseled, commanded, induced and procured by defendant JOSHUA RADCLLIFFE, knowingly and intentionally distributed and dispensed a quantity of oxycodone, also known as Endocet, a Schedule II controlled substance, not for legitimate medical purposes and outside the scope of professional practice to customer M.H.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT NINETY-EIGHT
### (Conspiracy to Money Launder)

1.     Paragraphs 1 through 46 of Count One are incorporated herein by reference.

2.     From on or about November 2010, through June 2015, in Beaver and Beckley, Raleigh County, and Charleston, Kanawha County, West Virginia, in the Southern District of West Virginia and elsewhere, defendants JAMES H. BLUME, JR., D.O., MARK T. RADCLIFFE, MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., and ROSWELL TEMPEST LOWRY, M.D., and others known and unknown to the Grand Jury, did knowingly conspire with each other to commit offenses in violation of 18 U.S.C. § 1956(a)(1)(A)(i), that is knowingly to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specific unlawful activities, with the intent to promote the carrying on of the specified unlawful activities, while knowing the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

3.     The specified unlawful activities included the knowing and intentional distribution and dispensing of oxycodone, a Schedule II controlled substances, not for legitimate medical purposes and outside the scope of professional practice, in

33

violation of 21 U.S.C. § 841(a)(1), and conspiracy to commit that offense, in violation of 21 U.S.C. § 846.

4.    The defendants intended to promote the carrying on of the specified unlawful activities through the payment and receipt of bonuses to practitioners and PPPFD employees, which encouraged defendants to continue to prescribe Schedule II prescription pain medications to customers who otherwise showed signs of abuse or diversion, at times in direct contravention of HOPE Clinic and PPPFD policies; to keep customers returning to the HOPE Clinic by prescribing Schedule II controlled substances; and to move as many customers as possible through HOPE Clinic each day without providing legitimate medical care

In violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE

1.    The allegations contained in Counts One through Ninety-Eight of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982(a).

2.    In accordance with 21 U.S.C. § 853(a) and Rule 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon the conviction of the defendants JAMES H. BLUME, JR., D.O., MARK T. RADCLIFFE, JOSHUA RADCLIFFE, MICHAEL T. MORAN, M.D., SANJAY MEHTA, D.O., BRIAN GULLETT, D.O., VERNON STANLEY, M.D., MARK CLARKSON, D.O., WILLIAM EARLEY, D.O., PAUL W. BURKE, JR., M.D., ROSWELL TEMPEST LOWRY, M.D., and TERESA EMERSON, LNP of a violation of 21 U.S.C. §§ 801 et seq., the defendants shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses.

The United States intends to seek entry of a money judgment against the defendants for the gross proceeds involved in or traceable to property involved in the offenses set forth in Counts One through Ninety-Five of this Superseding Indictment.

3.    In accordance with 18 U.S.C. § 982(a) and Rule 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon the

35

conviction of defendants BLUME, MARK T. RADCLIFFE, MORAN, MEHTA, GULLETT, STANLEY, CLARKSON, EARLEY, BURKE, and LOWRY, of a violation of Title 18, United States Code, Section 1956(h), as set forth in Count Ninety-Eight of this Superseding Indictment, the defendants shall forfeit to the United States any property, real or personal, involved in the said offense, and any property traceable to property involved in the offense, including but not limited to the following:

The United States will seek forfeiture as to each defendant listed in the table below for the amount listed in the table, as that sum in aggregate constitutes the gross proceeds derived by the defendants from the conspiracy during the period alleged in Count Eighty-four:

| Defendant | Amount |
|---|---|
| James H. Blume, Jr. | $3,700,554.19 |
| Mark Radcliffe | $3,700,554.19 |
| Michael T. Moran | $60,022.85 |
| Sanjay R. Mehta | $695,990.00 |
| Brian C. Gullett | $96,007.67 |
| Vernon Stanley | $195,083.72 |
| Mark Clarkson | $250,298.10 |
| William Earley | $70,018.45 |
| Roswell Tempest Lowry | $17,789.52 |
| Paul Burke | $41,701.09 |

4.   If any of the property described above, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

36

b.    has been transferred or sold to, or deposited
      with, a third party;

c.    has been placed beyond the jurisdiction of the
      court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which
      cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of

substitute property pursuant to Title 21, United States Code,

Section 853(p).

MICHAEL B. STUART
United States Attorney

By:   _____
      MONICA D. COLEMAN
      Assistant United States Attorney

      _____
      MEREDITH GEORGE THOMAS
      Assistant United States Attorney